IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MICHAEL MCLELAND, ET AL., | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Civil Action No.  SA-14-CV-1117-XR |
| | § | |
| 1845 OIL FIELD SERVICES, | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

### ORDER

On this day the Court considered Defendant's motion to dismiss for lack of subject matter jurisdiction and, in the alternative, failure to state a claim upon which relief can be granted and lack of supplemental jurisdiction.  Docket no. 15.  For the following reasons, the Court DENIES the motion.

### I.    BACKGROUND

Plaintiff Michael McLeland brought this suit on behalf of himself and all others similarly situated for violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), and the New Mexico Minimum Wage Act, NMSA § 50-4-19 *et seq*. ("NMMWA"), against his former employer, Defendant 1845 Oil Field Services ("Defendant").  Defendant is an oil field services company with offices and operations in Texas whose primary business includes "the coordination of drilling sand and other materials into the oil fields."  Docket no. 1 at ¶ 9.  McLeland was a "sand coordinator" with the Defendant.  Sand coordinators' job responsibilities included: ensuring "the required sand is unloaded from the delivery trucks and loaded into the blender for use;" and "assist[ing] in getting trucks into position, inspect the sand delivered, hook

up hoses to trucks that deliver the sand." *Id*. at ¶¶ 12-13.  McLeland worked for Defendant as a sand coordinator in New Mexico and Texas.  *Id*. at ¶ 4.

McLeland alleges sand coordinators were paid a flat rate for each shift or day worked with no overtime, despite often working over forty hours per week and shifts in excess of eight hours per day.  *Id*. at ¶¶ 28-34.  He alleges Defendant's payment structure violated the FLSA and NMMWA.  *Id*. at 38.   He invokes this Court's federal question jurisdiction under 28 U.S.C. § 1331 through the FLSA claim, and supplemental jurisdiction under 28 U.S.C. § 1367 for the state law NMMWA claim.

McLeland filed this complaint on December 19, 2014.  Docket no. 1.  The parties agreed that Defendant would have until February 10, 2015 to answer the complaint.  Docket no. 12.  Pursuant to that agreement, Defendant filed its motion to dismiss for lack of subject matter and supplemental jurisdiction (docket no. 15), as well as its answer (docket no. 16) on February 10, 2015.  In its motion to dismiss, Defendant argues: 1) the Court lacks subject matter jurisdiction because sand coordinators fall under the Federal Motor Carrier Act (FMCA) exemption to the FLSA in 29 U.S.C. § 213(b)(1); 2) if the Court exercises subject-matter jurisdiction over the FLSA claim, the claim should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted because sand coordinators are exempt under the FMCA exemption; and 3) once the FLSA claims are dismissed, the Court lacks supplemental jurisdiction over the state law NMMWA claim, or, in the alternative, if the Court has jurisdiction and maintains the FLSA claim, the NMMWA so dominates the federal law claim that supplemental jurisdiction is improper.  McLeland responded to the motion to dismiss on February 27, 2015.  Docket no. 17.  Defendant replied on March 5, 2015.  Docket no. 20.

## II.   LEGAL STANDARD

Defendant moves to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1) based on the FMCA exemption.  In the alternative, Defendant moves to dismiss under Rule 12(b)(6) for failure to state a claim.  "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice.  *Id.*

The Court must dismiss a cause for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case."  *See Home Builders Assn. of Mississippi, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).  A motion to dismiss for lack of jurisdiction under 12(b)(1) may be decided on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts, plus the Court's resolution of disputed facts.  *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009).  Unlike a 12(b)(6) motion, the district court is empowered to consider matters outside the complaint and matters of fact that may be in dispute in a 12(b)(1) motion.  *Ramming*, 281 F.3d at 161.

Next, "to survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim for relief must contain (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought."  FED. R. CIV. P. 8(a).  In

3

considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed favorably to the plaintiff. *Fernandez-Montez v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). To survive a 12(b)(6) motion, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

### III.   ANALYSIS

**1. Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction**

Defendant argues this Court does not have subject matter jurisdiction because McLeland and the other "sand coordinators" in this lawsuit are exempted from FLSA coverage by the FMCA exemption in 29 U.S.C. § 213(b)(1). Section 213(b)(1) provides an exemption to the FLSA overtime requirements for "any employee with respect to whom the Secretary of Transportation [(the "Secretary")] has power to establish qualifications and maximum hours of service." 49 U.S.C. § 31502(b)(2) permits the Secretary to set "qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation." The Secretary may establish qualification and hour requirements if the employees (1) are employed at companies engaged in interstate commerce, and (2) "engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the [FMCA]." 29 C.F.R. § 782.2(a); *Allen v. Coil Tubing Servs., L.L.C.*, 755 F.3d 279, 283 (5th Cir. 2014). The FMCA exemption only applies to employees who meet both criteria. *Allen*, 755 F.3d at 283.

Defendant asserts the Court lacks subject-matter jurisdiction over this lawsuit because the Defendant is engaged in interstate commerce and its sand coordinators "engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce."  Docket no. 15 at 3.

In his response Plaintiff cites several cases demonstrating this question goes to the merits of the case, rather than the court's jurisdiction.  *See, e.g.*, *Casares v. Henry Limousine Ltd.*, No. 09 CIV. 458, 2009 WL 3398209, at *1 (S.D. N.Y. Oct. 21, 2009).  This Court agrees.  *See Vanzzini v. Action Meat Distributors, Inc.*, 995 F. Supp. 2d 703, 711–12 (S.D. Tex. 2014) (considering the FMCA exemption an affirmative defense decided at the summary judgment stage).

Federal question jurisdiction is properly invoked by pleading a claim "arising under" the laws of the United States.  *See Bell v. Hood*, 327 U.S. 678, 681–685 (1946).  A claim "arises under" the laws of the United States when "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern Franchise Tax Bd. of State of Cal.*, 463 U.S. 1, 27–28 (1983).  McLeland's claim arises under the laws of the United States as it is brought pursuant to the private right of action in the FLSA.  29 U.S.C. § 216(b).

Therefore, the Court denies Defendant's Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction because questions about the application of the FMCA exemption to an FLSA claim are not jurisdictional and are appropriately handled at the merits stage.  *See Arbaugh*, 546 U.S. at 516 ("[W]hen Congress does not rank a statutory limitation on coverage as

jurisdictional, courts should treat the restriction as nonjurisdictional in character."); *Hopkins v. Cornerstone America*, 512 F.Supp.2d 672, 681 (N.D. Tex. 2007) (applying *Arbaugh* and holding that whether the plaintiff was an "employee" under the FLSA "does not affect federal-court subject-matter jurisdiction but, instead," goes to the merits of the FLSA claim); *Rivera v. Heights Landscaping, Inc.*, No. 03C6428, 2004 WL 434214, at *1 (N.D. Ill. Mar. 5, 2004) ("Whether plaintiffs fall within the protection of the FLSA is an issue regarding the merits of their claims, not the court's jurisdiction.").

### 2. Rule 12(b)(6) motion to dismiss for failure to state a claim

Defendant also moves for the Court to dismiss the complaint under Rule 12(b)(6) because it unilaterally declares that the employees are covered by the FMCA exemption in 29 U.S.C. § 213(b)(1). To support its argument, Defendant submits summary judgment evidence including a job description for sand coordinators and an affidavit from a Sand Coordinator Manager.

Rule 12(b)(6) motions are motions to dismiss when a plaintiff fails to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b). Courts are not to consider matters outside the complaint except in very limited circumstances, and this is not one of those circumstances. *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (holding that while the court generally must not go outside the pleadings, "the court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'")); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *see also Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007) (courts may take judicial notice of matters of public record).

McLeland has stated a statutory claim against Defendant upon which relief may be granted for violating the FLSA's overtime requirements. Defendant's FMCA argument is an

affirmative defense that requires discovery and more factual development before being decided on the merits. *Vanzzini*, 995 F. Supp. 2d at 711–12 (S.D. Tex. 2014) (considering the FMCA exemption an affirmative defense); *Songer v. Dillon Res., Inc.*, 636 F. Supp. 2d 516, 518 (N.D. Tex. 2009), *aff'd*, 618 F.3d 467 (5th Cir. 2010) (same; while evaluating cross-motions for summary judgment).

As stated above, the FMCA exemption applies to employees for whom the Secretary may establish qualifications and maximum hours. The Secretary can set those requirements for employees who (1) are employed at companies engaged in interstate commerce, and (2) "engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the [FMCA]." 49 U.S.C. § 31502(b)(2). "[T]he character of the activities involved in the performance of [the employee's] job" controls rather than "the name given to his position [or] that given to the work that he does." *Allen*, 755 F.3d at 283 (citing 29 C.F.R. § 782.2(b)(2)).

To be covered by the FMCA exemption, the sand coordinators must be either "drivers," "driver's helpers," or "loaders" as described by the Department of Transportation regulations and the FMCA exemption.

The general rule is if in the ordinary course of his work the alleged driver, driver's helper, or loader is likely to "perform, either regularly or from time to time, safety-affecting activities," he falls under the FMCA exemption. *Songer v. Dillon Res., Inc.*, 618 F.3d 467, 474 (5th Cir. 2010) (quoting 29 C.F.R. § 782.2(b)(3)). "On the other hand, where the continuing duties of the employee's job have no substantial direct effect on such safety of operation or where such safety-affecting activities are so trivial, casual, and insignificant as to be *de minimis*, the

exemption will not apply to [the employee] in any workweek so long as there is no change in his duties." *Allen*, 755 F.3d at 284 (citing 29 C.F.R. § 782.2(b)(3)).  Further, the *Allen* court clarified the "safety-affecting activities" must be "interstate in nature." *Id*.  An employee's activities are interstate in nature if it "could reasonably have been expected to [engage] in interstate commerce consistent with their job duties." *Id*. (quoting *Songer*, 618 F.3d at 476. "The exemptions must be applied only to those 'plainly and unmistakably within [the] terms and spirit [of Section 213(b)(1)].'" *Hodgson v. Colonnades, Inc.*, 472 F.2d 42, 47 (5th Cir. 1973) (quoting *Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)).

The Fifth Circuit analyzed whether certain "drivers" were covered by the FMCA exemption in *Allen* and *Songer*.  In both instances, the court looked to all the drivers with the same title and job description as the plaintiffs, and determined what percentage of assignments those drivers had were interstate trips.  If above a certain percentage, the drivers "could have reasonably" been expected to impact interstate commerce regardless of whether the driver ever actually traveled out of state himself.  *See id*. at 284–85; *Songer*, 618 F.3d at 475–76.

The Department of Transportation regulations contemplate "driver's helpers," as those that travel with drivers in interstate commerce.  *See* 29 C.F.R. § 782.4 (providing a driver's helper "is an employee other than a driver, who is required to ride on a motor vehicle when it is being operated in interstate commerce"); *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 701 (1947) (affirming the regulations definitions).  The regulations list positions that might qualify as "driver's helpers" including "armed guards on armored trucks and conductorettes on buses."  The regulations also list activities performed on the public highways or in interstate commerce that a driver's helper might perform to help determine if an employee is a driver's helper: 1) loading and unloading; 2) "dismount when the vehicle approaches a railroad crossing

8

and flag the driver across the tracks, and perform a similar duty when the vehicle is being turned around on a busy highway or when it is entering or emerging from a driveway; in case of a breakdown;" 3) "[p]lace the flags, flares, and fuses as required by the safety regulations;" 4) "go for assistance while the driver protects the vehicle on the highway," and 5) "assist the driver in changing tires or making minor repairs; and assist in putting on or removing chains." *See* 29 C.F.R. § 782.4; *see also Allen v. Coil Tubing Servs.*, L.L.C., 846 F. Supp. 2d 678, 700 (S.D. Tex. 2012) *aff'd*, 755 F.3d 279 (5th Cir. 2014).

"Loaders" in the Department of Transportation regulations are those "whose duties include, among other things, the proper loading of his employer's motor vehicles so that they may be safely operated on the highways of the country," not just at a work site. 29 C.F.R. § 782.5(a). They affect proper loading and safety by using "judgment and discretion in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate or foreign commerce will not be jeopardized." *Id*. The regulations also specifically mention unloading freight to be stored in an on-site warehouse or otherwise as a duty often associated with "loaders" that is not a safety-affecting activity interstate in nature. *See id*. United States Department of Labor "Fact Sheet # 19" discusses § 782.5 and states "those who unload vehicles, or those who load but are not responsible for the proper loading of the vehicle" are not engaged in safety-affecting activities within the meaning of § 782.5. U.S. DEPT. OF LABOR, Fact Sheet #19: The Motor Carrier Exemption under the Fair Labor Standards Act (FLSA), at 2 (November 2009).

Defendant states McLeland and the other sand coordinators were loaders and driver's helpers because they were "required to back and direct trucks, connect the trucks to the sand mixer, mix sand proportionately according to a prescribed formula and determine appropriate

9

loading ratios for use in the fracking process." Docket no. 15 at 4. Defendant argues the sand coordinators thus "directly impact the safety of the drivers and vehicles of the trucks which travel interstate from drilling site to drilling site." *Id*. (citing docket no. 15-1).

Conspicuously, Defendant never argues the sand coordinators safety-affecting activities are interstate in nature. Rather, it only argues they impact the safety of drivers and trucks that "travel interstate." On the record before the Court, the sand coordinators appear to only impact the safety of drivers in trucks at the sites they work at, not the safety of the drivers or trucks while they are travelling, or might be expected to travel interstate. *See* docket no. 15-1 ("[B]acks trucks *on location*; unhooks trucks to be loaded . . . polices *work area* for debris.") (emphasis added). However, the record is too limited at this time for the Court to rule on whether the sand coordinators are loaders, driver's helpers, or both. The Rule 12(b)(6) motion is denied. The Court does not convert it to a motion for summary judgment. Instead, the parties should conduct discovery and move for summary judgment at a more appropriate stage of litigation.

3. **Supplemental jurisdiction and preemption**

Defendant argues the Court should dismiss the NMMWA claims for lack of jurisdiction if it dismissed the FLSA claims because the Court would no longer have a basis for supplemental jurisdiction under 28 U.S.C. § 1367 without the federal claim. However, the Court denied Defendant's motion to dismiss the FLSA claims and those claims remain pending. Thus, its arguments based on the federal claims being dismissed are moot. Defendant therefore only argues that the Court should dismiss the NMMWA claims because 1) the FLSA preempts the applicable NMMWA provisions, or 2) because the NMMWA claims "predominate" the federal claim.

A. Preemption

It is a "fundamental principle of the Constitution . . . that Congress has the power to preempt state law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000) (citing U.S. CONST. art. VI, cl. 2). When analyzing preemption, a court's "sole task is to ascertain the intent of Congress." *Empacadora de Carnes de Fresnillo, S.A. de C.V., v. Curry*, 476 F.3d 326, 333 (5th Cir. 2007) (citing *Cal. Fed. Sav. & Loan v. Guerra*, 479 U.S. 272, 280 (1987)). Congress may expressly preempt state law, or it may preempt state law "implicitly by directly conflicting with it or by occupying a field so pervasively as to naturally exclude it." *Id*. (citing *Perry v. Mercedes Benz of N. Am., Inc.*, 957 F.2d 1257, 1261 (5th Cir. 1992)). Implied conflict preemption occurs when "'it would be 'physically impossible' for a private party to comply with both federal and state law," or when "the law 'stand[s] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Curry*, 476 F.3d at 334 (quoting *Planned Parenthood of Houston & Se. Tex. v. Sanchez*, 403 F.3d 324, 336 (5th Cir. 2005)).

Defendant argues the FLSA preempts the NMMWA claims according to the implied conflict preemption theory, citing *Karna v. BP Corp. North Am.*, 11 F.Supp. 3d 809, 817 (S.D. Tex. 2014). *Karna*'s dicta appears to support the idea that the FLSA might preempt state law minimum wage and overtime claims. *See id*. at 817 (discussing a Texas law *quantum meruit* claim: "because [plaintiff's] *quantum meruit* claim seeks neither the statutory minimum wage nor the statutory overtime premium rate, it cannot be said to be preempted by the FLSA"). However, a preemption analysis demonstrates the FLSA does not preempt the state law claims presented in this case.

Defendant argues

> [i]mplied preemption applies here because the [NMMWA] conflicts with Congressional intent in promoting uniformity in interstate commerce, and in this instance, makes it impossible for Defendant to comply with both state and federal law. [NMMWA]

11

> conflicts with the FLSA because it does not recognize the MCA exemption from overtime. Since Defendant's Sand Coordinators fall within the MCA exemption from overtime because of the interstate nature of their work (as pled by Plaintiff), it is impossible for Defendant to comply with both the FLSA and the NMMWA.

Docket no. 15 at 6.  In its reply, Defendant also argues the NMMWA provision that would require overtime wages paid to individuals that might be covered by the FMCA exemption is an obstacle to Congress's intent for the FLSA when it created the FMCA exemption, so the NMMWA provisions must be preempted.  Docket no. 20 at 3 ("It would frustrate the purpose of the [FMCA] to allow the [NMMWA provisions] to negate the exemption the act provides to the FLSA, and as such, [Mcleland's] state law cause of action cannot persist.").

The FLSA, however, does not impliedly preempt the NMMWA in this area because Congress clearly did not intend to preempt state law wage and hour claims in the FLSA, and the NMMWA provisions at issue further the goals of the FLSA rather than standing as an obstacle to them.  The FLSA includes a savings clause that provides state laws that are more stringent than the protections in the FLSA are not preempted.  *See* 29 U.S.C. § 218(a) ("No provision of this chapter or of any order thereunder shall excuse noncompliance with any . . . State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum workweek lower than the maximum workweek established under this chapter . . . .").  Courts analyzing overtime issues, including the FMCA exemption, have also held that the FLSA does not preempt more stringent state wage and hour laws such as those requiring employers pay FMCA exempt employees time-and-a-half for overtime.  *See, e.g.*, *Pettis Moving Co. v. Roberts*, 784 F.2d 439, 441 (2d Cir. 1986) ("Section 218(a) of the FLSA explicitly permits states to set more stringent overtime provisions than the FLSA . . . Congress did not prevent the states from regulating overtime wages paid to workers exempt from the

12

FLSA."); *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 193 (4th Cir. 2007) (holding the FLSA did not preempt state law claims under breach of contract, negligence, and fraud in a case involving overtime pay for employees who spent time putting on and taking off uniforms).

Further, it is not "physically impossible" for Defendant and other employers to comply with both laws. The FLSA does not forbid the payment of FMCA covered employees time-and-a-half for overtime. The NMMWA may require time-and-a-half overtime payments for employees who fall under the FMCA exemption. The two are not in fatal conflict because companies could comply with both federal and state law by paying FMCA exempt employees time-and-a-half. They would comply with the FLSA by doing so.

Contrary to Defendant's argument, the intent of the FLSA was to improve the welfare and safety of employees across the country, not create a system that provides protections for workers except those who affect the safety of the public highways because they somehow do not deserve protection. *Anderson*, 508 F.3d at 192 ("Congress enacted the FLSA to eliminate 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'") (quoting 29 U.S.C. § 202(a)). The FLSA simply exempts some employees from its purview because the Secretary of Transportation might be better positioned to regulate and protect those employees. The intent was not to forbid the state's their traditional sovereign power to regulate the health and safety of their FMCA exempt citizens. A purpose of the FLSA was to supplement state law and improve the health and safety of Americans. *See Roberts*, 784 F.2d at 441. The NMMWA provisions on overtime are not an obstacle to the overall intent for the FLSA. Rather, the NMMWA furthers the FLSA's goals because it provides for the health and safety of the citizenry by increasing worker protections. *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996). The FLSA does not

expressly or impliedly conflict with the NMMWA.  The two laws work in tandem.  Defendant's motion to dismiss the NMMWA claims based on preemption is denied.

      B.  Predomination

Federal courts have supplemental jurisdiction over state law claims that "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 387 (1998) (citing 28 U.S.C. § 1367(a)) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.")).  28 U.S.C. § 1367(c) provides a district court "may decline to exercise supplemental jurisdiction over a claim under [§ 1367(a)] if . . . the claim substantially predominates over the claim or claims over which the district court has original jurisdiction."  *See also Brookshire Bros. Holding v. Dayco Products, Inc., 554 F.3d 595, 602 (5th Cir. 2009)*.  "Where 'the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.'"  *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003), *as amended* (Nov. 14, 2003) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).  District courts only find substantial predomination "where a state claim constitutes the real body of a case, to which the federal claim is only an appendage–only where permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog."  *Id*.

The circuit courts addressing supplemental jurisdiction in FLSA cases unanimously hold that when "the state law claims essentially replicate the FLSA claims—they plainly do not predominate." *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 980 (7th Cir. 2011) (quoting *Lindsay v. Government Employees Ins. Co.*, 448 F.3d 416, 425 (D.C. Cir. 2006)); *see also Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 246 (2d Cir. 2011) ("In adjudicating the federal claims, the District Court likely will determine whether the Plaintiffs were tip-eligible under the FLSA. Because the FLSA and the [state statute] use a similar standard for making such a determination, and because each set of claims arise from the same set of operative facts," the state claims do no predominate).

Defendant argues that because the NMMWA definition of "employee" differs from the definition in the FLSA, and the NMMWA "does not permit any other methods of calculation of overtime payment other than time-and-one-half after 40 hours worked in a seven-day period, which conflicts with the [29 C.F.R. § 778.112] permitting employers to calculate pay on the day rate basis," the NMMWA predominates. Docket no. 15 at 6. Defendant cites no case law to support its assertion.

The Court does not see how these potential differences in application, should they eventually prove different, means the NMMWA claims substantially predominate over the FLSA claims. While these might be issues the parties and Court need to address at a later stage, the federal and state claims in the complaint are essentially identical, so the state claims do not predominate. *See Ervin*, 632 F.3d at 980; *Shahriar*, 659 F.3d at 246. The state law claim will not require extra proof, raise a substantially broader scope of issues, or a more comprehensive remedy. *See Tyson Foods, Inc.*, 342 F.3d at 309. The Court has supplemental jurisdiction over the NMMWA claims in the complaint and exercises it at this time.

15

The Court notes, however, that in the past it has limited conditional class certifications to members of only one state to avoid potential clashes in state wage and hour laws that might apply to different plaintiffs.  *See Escobar et al. vs. Rental Xpress, LLC, et al.*, 5:14-cv-00267-XR, Docket no. 15 (W.D. Tex. August 25, 2014).  Several different state laws that may be applied differently than federal law, and from each other, could create issues that "predominate" a case, and the Court seeks to avoid those issues.  Still, the Court makes no ruling on the breadth of the class now, and this order should not be construed as binding on it in the future for class certification purposes.

## IV.   CONCLUSION

For all of the above reasons, Defendant's motion to dismiss (docket no. 15) is DENIED.

SIGNED this 16th day of March, 2015.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE